IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL CASEY SOODJINDA,
                Plaintiff,

v.                          Case No. 6:22-cv-01255

MORTON COUNTY HEALTH SYSTEM,
                Defendant.

## **COMPLAINT**

The Plaintiff, Michael Casey Soodjinda, through undersigned counsel, states as and for his Complaint as follows:

### PARTIES, JURISDICTION AND VENUE

1. Michael Casey Soodjinda is at all times material hereto was a resident of the State of Kansas.

2. Morton County Health System is a provider of health care services, is located at 445 Hilltop Street, Elkhart, Kansas 67950 and may be served with process pursuant to K.S.A. 60-304(d)(4) through its clerk or secretary or any of its officers, directors or managers.

3. This Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331, federal question.

4. Venue is properly placed with this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. The Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on August 12, 2021.

6. The U.S. Equal Employment Opportunity Commission issued a "Dismissal and Notice of Rights" to the Plaintiff on July 7, 2022. This Complaint is timely filed.

ALLEGATIONS OF FACT

7. Morton County Health System (MCHS) operates Morton County Hospital, Morton County Clinic and Morton County Senior Living among other health care services.

8. Morton County Hospital is based in Elkhart, Kansas and serves Morton County, Kansas and surrounding counties.

9. On November 6, 2019, MCHS hired Michael Soodjinda as its Chief Financial Officer.

10. Soodjinda had worked for several Fortune 500 companies as a financial executive before starting work at MCHS.

11. When Soodjinda started with Morton County Health, Chad Thompson was the Chief Executive Officer.

12. On January 6, 2020, Soodjinda's probation period ended.

13. On February 6, 2020, Soodjinda left work early to take his four-year-old daughter to her pediatrician in Lawrence, Kansas, which was about an eight-hour trip one way. His daughter had a fever of 105 degrees. A doctor later diagnosed her with having influenza and bronchitis. She also has asthma.

14. After that trip, Chief Executive Officer Chad Thompson contacted Brian Mitchell, who was Chairman of the MCHS Board of Trustees.

15. Mitchell contacted Soodjinda about taking his daughter to the pediatrician.

16. After leaving work early to take his daughter to her pediatrician, Leah Luera, Chief Human Resource Officer deducted two days of pay from Soodjinda's compensation.

17. On February 7, 2020, Soodjinda filed a complaint with the Morton County Commissioners about his mistreatment by Luera and Thompson.

18. From February, 2020, through May 5, 2020, Thompson subjected Soodjinda to

2

harassment in retaliation for Soodjinda filing the complaint with the Morton County Commissioners.

19. The harassment involved verbal abuse from Thompson such as being called shady, a liar, a snake and other derogatory terms.

20. The harassment included Thompson and Luera driving by Soodjinda's home with no reason for doing so.

21. On November 15, 2020, Luera contacted her cousin Brea (LNU) who was the operator of the daycare where Mr. Soodjinda took his daughter.

22. Brea told Soodjinda that Luera wanted her to contact child protective services and state that Soodjinda was abusing his daughter. Brea told Soodjinda that she had refused to make that contact.

23. Luera then contacted another daycare operator, Audrey (LNU) to help her contact child protective services.

24. On April 15, 2020, Thompson and Luera were searching Facebook to find pictures of people who had applied for employment with MCHS.

25. When Soodjinda asked why they were doing that, Luera said that African-Americans did not do well at MCHS.

26. On May 5, 2021, Thompson walked out of Board of Trustees' meeting after numerous employees complained about his management practices at the meeting. At the same meeting, the Board chair Mitchell and Vice-Chair Todd Johnson walked out of the meeting. Johnson later rejoined the Board to become President.

27. The following day, May 6, 2021, Soodjinda became interim CEO, replacing Thompson who had resigned.

28. On that day, Soodjinda drove to Heartland Bank. Luera was also at Heartland Bank.

29. At the bank, Luera spoke with two members of the Board of Trustees, Mandy Burton and Pam Lamb. Board members are not supposed to meet with staff unless it is the CEO.

30. After Soodjinda waited for hours at the bank, the Board members refused to speak with him.

31. The Board of Trustees limited Soodjinda's authority as interim CEO. The Board told Soodjinda that he could not terminate employees without Board approval. The Board also ordered that Luera to report directly to the Board and not to Soodjinda.

32. The Board told Soodjinda that he could not move into the CEO's office. The Board also told Soodjinda that he could not sign checks for the hospital.

33. From May 5, 2020, through June 16, 2020, The Board of Trustees harassed and verbally abused Soodjinda. On his first day on the Board in this period of time, Troy Barnett screamed at Soodjinda while using aggressive body language. Soodjinda feared Barnett would attack him.

34. One June 15, 2020, Soodjinda was told that a consultant would be helping with a business improvement plan. Patrick Custer was the consultant.

35. On June 16, 2020, The Board removed Soodjinda as interim CEO without any notice or reason to support the removal.

36. Custer's niece was Lamb. On June 17, 2020, Custer appointed himself CEO.

37. The Board permitted Lamb to sign checks for MCHS.

38. Starting in a July 6, 2020 Board meeting, members described Soodjinda as trying to undermine Custer.

39. On July 7, 2020, Custer told Soodjinda that he could not give Soodjinda an employment contract. Soodjinda was the only executive officer who did not have a contract of employment.

4

40. On July 15, 2020, the Board removed Luera as Chief Human Resource Officer after documentation showed that she had cost the hospital more than $500,000. The Board still did not terminate Luera.

41. From August, 2020 through March of 2021, Custer made it known to Soodjinda that the Board of Trustees disliked him.

42. Lamb and her husband owned a fitness center in Elkhart. The center terminated Soodjinda's membership unexpectedly during this period of time.

43. In April, 2021, Soodjinda submitted his resignation.

44. A day later, Custer hired a new CFO, who was a female Caucasian and who had grown up in Elkhart.

COUNT I
TITLE VII – RACE DISCRIMINATION

45. The Plaintiff hereby incorporates by reference Paragraphs 1 through 44 above as though fully set forth herein.

46. The Plaintiff is a member of a protected racial class, specifically, Thai-American.

47.  The Plaintiff was qualified for the position he was performing and was performing his job satisfactorily.

48. The Defendant intended to discriminate against the Plaintiff on the basis of the Plaintiff's race.

49. The Defendant terminated the Plaintiff under circumstances giving rise to an inference of race discrimination, all in violation of 42 U.S.C. §2000e—2(a)(1) and 2(a)(2) (Title VII).

50. The Plaintiff has sustained damages resulting from the Defendant's conduct.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor

against the Defendants for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees, for costs, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

## COUNT II
## 42 U.S.C. SECTION 1981 – RACE DISCRIMINATION

51. The Plaintiff hereby incorporates by reference Paragraphs 1 through 44 above as though fully set forth herein.

52. The Plaintiff is a member of a protected racial class, specifically, Thai-American.

53. The Plaintiff was qualified for the position he was performing and was performing his job satisfactorily.

54. The Defendant intended to discriminate against the Plaintiff on the basis of the Plaintiff's race.

55. The Defendant terminated the Plaintiff under circumstances giving rise to an inference of race discrimination.

56. The Defendant interfered with a protected activity as defined in 42 U.S.C. §1981, specifically, the right to make and enforce contracts, including employment contracts.

57. The Plaintiff has sustained damages resulting from the Defendant's conduct.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendants for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest for reasonable attorney fees, for reasonable

expert witness fees, for costs, pursuant to 42 U.S.C. §1988, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

## COUNT III
## TITLE VII – RETALIATION

58. The Plaintiff hereby incorporates by reference Paragraphs 1 through 44 above as though fully set forth herein.

59. The Plaintiff engaged in the protected activity of reporting race discrimination to the Defendant.

60. The Defendant discharged the Plaintiff.

61. A reasonable employee would be dissuaded from reporting race discrimination and then being terminated after engaging in that protected activity.

62. The Defendant's stated reasons for the termination were false and pretextual.

63. The discharge was motivated by the protected activity such that there was a causal connection between the two in violation of 42 U.S.C. § 2000e – 3(a).

64. The Plaintiff has sustained damages.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendant for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees, for costs, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

## COUNT IV
## 42 U.S.C. SECTION 1981 – RETALIATION

65. The Plaintiff hereby incorporates by reference Paragraphs 1 through 44 above as

7

though fully set forth herein.

66. The Plaintiff engaged in the protected activity of reporting race discrimination to the Defendant.

67. The Defendant discharged the Plaintiff.

68. A reasonable employee would be dissuaded from reporting race discrimination and then being terminated after engaging in that protected activity.

69. The Defendant's stated reasons for the termination were false and pretextual.

70. The discharge was motivated by the protected activity such that there was a causal connection between the two in violation of 42 U.S.C. § 1981.

71. The Plaintiff has sustained damages.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendants for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest for reasonable attorney fees, for reasonable expert witness fees, for costs, pursuant to 42 U.S.C. §1988, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

*/s/ Theodore J. Lickteig*
Theodore J. Lickteig #12977
Lickteig Law Firm, LLC
12760 West 87th Street, Suite 112
Lenexa, Kansas 66215
913-894-1090

8

tjllawoffice@planetkc.com
*Attorney for Plaintiff*

## **JURY DEMAND**

The Plaintiff, by and through undersigned counsel, hereby demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/ Theodore J. Lickteig*
Theodore J. Lickteig #12977
Lickteig Law Firm, LLC
12760 West 87th Street, Suite 112
Lenexa, Kansas 66215
913-894-1090
tjllawoffice@planetkc.com
*Attorney for Plaintiff*